# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROBERT VIRGIL RYE,

      Petitioner,

-vs-                                      Case No.  8:07-CV-1881-27EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Robert Rye ("Rye" or "Petitioner") filed a petition for the writ of habeas corpus pursuant to Title 28 U.S.C. § 2254 ("petition"). (Dkt. 1).  He also filed a memorandum of law in support of the petition.  (Dkt. 2).  Subsequently, Petitioner filed his Amended Memorandum of Law and Facts in Support of Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Petitioner in State Custody (Dkt. 33).  Petitioner challenges his conviction for robbery entered in 2001 by the Thirteenth Judicial Circuit Court in Hillsborough County, Florida.  Respondent filed a response to the petition.  (Dkt. 14).  Petitioner filed a reply to Respondent's response.  (Dkt. 16).  After consideration, Petitioner's petition is DENIED.

## PROCEDURAL HISTORY

On November 9, 2000, Rye was charged by Supersedes Information with robbery of a bank on December 22, 1999, in violation of section 812.13, Fla. Stat. (1999). (Respondent's Ex.

25: Vol. 1: R 31-33).[1]  Following a jury trial, the jury found Rye guilty of robbery as charged. (Respondent's Ex. 25: Vol. 1: R 62). On November 2, 2001, the court sentenced Rye to thirty (30) years in prison as a Violent Career Criminal. (Respondent's Ex. 25: Vol. 1: R 81-86).  On November 8, 2002, the state appellate court per curiam affirmed Rye's conviction and sentence. (Respondent's Ex. 3); *Rye v. State*, 834 So. 2d 171 (Fla. 2d DCA 2002) [table].

On May 16, 2003, Rye filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Respondent's Ex. 5).  On November 22, 2004, the state court held an evidentiary hearing on Rye's Rule 3.850 motion.  (Respondent's Ex. 8).  On February 28, 2005, the state court denied Rye's Rule 3.850 motion.  (Respondent's Ex. 9).  On May 12, 2006, the state appellate court per curiam affirmed the denial of Petitioner's Rule 3.850 motion.  (Respondent's Ex. 12); *Rye v. State*, 932 So. 2d 200 (Fla. 2d DCA 2006) [table].

On July 10, 2006, Rye filed a motion to correct illegal sentence pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure.[2]  On May 2, 2007, the state court denied the Rule 3.800(a) motion.  (Respondent's Ex. 20).  On October 17, 2008, the state appellate court per curiam affirmed the denial of Petitioner's Rule 3.800(a) motion. *Rye v. State*, 997 So. 2d 417 (Fla. 2d DCA 2008) [table].

On August 11, 2006, Rye filed a second Rule 3.850 motion (Respondent's Ex. 16).  On April 18, 2007, the state court denied the second Rule 3.850 motion as untimely and successive (Respondent's Ex. 17).  On October 31, 2007, the state appellate court per curiam affirmed the denial of Petitioner's second Rule 3.850 motion. (Respondent's Ex. 18); *Rye v. State*, 968 So. 2d

---

[1]Jose Rodriguez was also charged with robbery and accessory after the fact (Id.).

[2]Respondent asserts that he does not have a copy of the Rule 3.800(a) motion (Dkt. 14 at p. 5).

570 (Fla. 2d DCA 2007) [table].

Petitioner filed his federal habeas petition in this Court on October 15, 2007. (Dkt. 1).[3]

He raised twenty (20) grounds for relief. (Id.).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e)  as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be

highly deferential. Such findings are presumed to be correct unless rebutted by clear and

convincing evidence. Similarly, the state courts' resolutions of issues of law, including

constitutional issues, must be accepted unless they are found to be "contrary to" clearly

established precedent of the Supreme Court of the United States or involved an "unreasonable

application" of such precedent. *Williams v. Taylor*, 529 U.S. 362, 386 (2000). It is not enough

that the federal courts believe that the state court was wrong; the state court decision must have

been "objectively unreasonable." *Id.*; *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

*Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel

claims.[4] *Strickland* noted that "[t]he benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." *Id.* at 692-93.  There is a strong

presumption, however, that counsel "rendered adequate assistance and made all significant

---

[3]Respondent does not challenge the timeliness of the petition.

[4]*See Chatom v. White*, 858 F.2d 1479, 1485 (11th Cir. 1988); *Dobbs v. Turpin*, 142 F.3d 1383, 1387 (11th Cir. 1998); *Francis v. Dugger*, 908 F.2d 696, 702 (11th Cir. 1990).

decisions in the exercise of reasonable professional judgment." *Id.* at 690. Because the court presumes effective assistance of counsel, Petitioner must prove both constitutionally deficient performance and resulting prejudice under *Strickland* to receive relief. *Id.* at 687.

To satisfy the two-part *Strickland* test, Petitioner must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Consequently, Petitioner may only succeed in claiming ineffective assistance if counsel failed to perform in a manner which was constitutionally compelled and that failure undermined the outcome of the trial. *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665, n. 38 (1984)).

## PROCEDURAL DEFAULT

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995)("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state

4

remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at

5

892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted). The *Schlup* Court stated the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995)(denying certificate of probable cause)(footnote omitted).

## DISCUSSION

Ground One

    In Ground One, Rye complains that counsel was ineffective in failing to move to exclude

or strike Jose Rodriguez's ("Rodriguez") testimony.  Specifically, Rye contends that Rodriguez gave several false statements and false versions of the robbery to police. He asserts that counsel should have challenged Rodriguez when Rodriguez denied knowing the name of the robber and claimed to have met him the morning of the robbery. Rye further claims that counsel should have challenged Rodriguez when he stated that the robber wore a short sleeve shirt and there were no tattoos on the robber's arm, and that Rye had a large dark tattoo on his left forearm. Rye also alleges that the results of Rodriguez's polygraph test proves that he lied when he denied knowing the name of the person that robbed the bank, and denied receiving any money from the robber. He asserts that Rodriguez's testimony "was fundamentally unreliable[.]" (Dkt. 2 at p. 4).  Rye argues that if counsel had moved to exclude or strike Rodriguez's testimony, the outcome of the case would have been different.

Following an evidentiary hearing, the state court denied this claim as follows:

At the November 22, 2004 evidentiary hearing, Defendant testified that he never told Mr. Lopez that he was with Jose Rodriguez on the day of the alleged offense. (See Transcript, November 22, 2005, pages 112, 130 attached). Defendant testified that he met Mr. Rodriguez for the first time at his arraignment in Judge Fleischer's courtroom. (See Transcript, November 22, 2005, page 130, attached).

Contrary to Defendant, Mr. Lopez testified at the November 22, 2004 evidentiary hearing that Defendant did advise him that he was with Mr. Rodriguez on the morning of the alleged crime. (See Transcript, November 22, 2005, pages 8-9, attached). Mr. Lopez specifically testified to the following:

A       During my discussions with Mr. Rye, I became aware that on the day of the robbery, beginning early that morning, Mr. Rye was not nor had been, in fact, with Mr. Thomas Breakey, that he had been with Mr. Rodriguez.

Q       And how did you find that out?

A       Mr. Rye related to me that they had gone to an employment service that

morning. He relayed to me the location of that employment service. He told me about circumstances that occurred while they were there. He had also told me about perhaps a piece of paper that had been obtained while they were there. He later - -

Q   Excuse me, when you say "they," are you talking about - -

A   Mr. Rodriguez. And that later they drove to - - as I recall, it was a Home Depot, and that after the Home Depot on Dale Mabry, they drove north and ended up at the bank located at the Albertson's on Dale Mabry and Waters; that after the robbery, Mr. Rodriguez and Mr. Rye had driven in a truck, a pickup truck as I recall; that they parked in a parking lot in an apartment parking lot very close to the Albertson's that was - - I say the Albertson's - - the bank at the Albertson's that was robbed and they walked to the Wendy's fast-food place on Dale Mabry just north of Waters; that sandwiches had been ordered; that Jose Rodriguez called for taxicabs; that a taxicab came.

And they took that cab to University Square Mall and that at University Square Mall, he had initially, as I recall, purchased a hat and maybe a T-shirt; and then that he did go into Lens Crafters and bought glasses; that after that he went to a pawn shop and there he bought something else. And I can't recall what it was so that I looked at the entire day, Mr. Breakey had not played any part in that - -

Q   Is it- -

A   - - nor had Lens Crafters at the time of the robbery.

Q   I'm sorry.

A   Yes.

Q   Is it your testimony that Mr. Rye admitted to you that he was with Mr. Rodriguez on the morning the robbery took place?

A   Yes.

Q    Is it your testimony that Mr. Rye - -

Defendant:   Bullshit.

Court:       Hold on a minute. I'm going to admonish Mr. Rye to sit quietly,

8

listen, chat afterwards, but I'm not going to have any outbursts during this proceeding, Mr. Rye. I'll have to have you removed if you can't sit there quietly and observe. Let's go ahead.

Defendant:   Sorry, Your Honor.

Q      Did Mr. Rye admit to you that he was involved in this robbery with Mr. Rodriguez?

A      No.

Q      No, he did not?

A      Mr. Rye never said to me, I committed the robbery with Mr. Rodriguez. What Mr. Rye would do was to say, in answer to a question that I might ask regarding the robbery, well, let's just suppose hypothetically that such and such happened. So he would relay what happened, but it would be phrased in hypothetical terms.

Q      So he never admitted to you that he committed this robbery.

A      Not as such.

Q      What he posed to you was hypothetical questions and asked you what your answer would be?

A      No. No. He would say, well suppose hypothetically, that I would went to the employment place and suppose hypothetically that I did get a sheet of paper that Mr. Rodriguez went in and got for me and suppose hypothetically that - - in other words, he relayed all of the facts that had occurred at that location. But they were all couched in hypothetical terms rather than, yes, I was there with him. (See Transcript, November 22, 2005, pages 8-11, attached). Mr. Lopez further testified that he had no basis to move to exclude Mr. Rodriguez' testimony at trial. (See Transcript, November 22, 2005, pages 84-85, attached). Furthermore, Mr. Lopez testified that he cross examined Mr. Rodriguez at trial. (See Transcript, November 22, 2005, pages 26, 71-73, 85, attached).

A review of the record reflects that Mr. Lopez elicited testimony from Mr. Rodriguez that Mr. Rodriguez gave numerous different false statements regarding the robbery to law enforcement.

Mr. Lopez specifically cross examined Mr. Rodriguez at trial as follows:

9

Q      You talked to the police the day after, did you not?

A      Yes.

Q      And you lied to them I think you said?

A      Un-hum.

Q      What did you tell them?

A      I told them I didn't know - - I didn't know the individual, I didn't know
       where the truck was at, and they asked me did I know his name. I said I
       didn't know his name.

Q      Okay. But you told them that that was the truth?

A      Yes.

Q      And did you tell them that the truck had been stolen?

A      Yes.

Q      Okay. You knew at the time that the truck had not been stolen, is that
       correct?

A      Yes.

(See Transcript, Vol II, September 24, 2001, pages 175-176, attached).

Additionally, Mr. Lopez further cross examined Mr. Rodriguez as follows:

Q      You called your wife?

A      Yes.

Q      And you told her that your truck has been stolen?

A      Yes.

Q      That was not the truth, was it?

A      No.

10

Q     Now let me take you back to Albertsons for a moment when you parked in front of the door and Mr. Rye was getting out. At that point when he got out of your truck isn't it a fact that he had nothing in his hands?

A     Yes.

Q     Okay. On the day following your being with Mr. Rye the police came to see you, did they not?

A     No, my wife had received a card from a detective and I called him up and they asked to speak with me and could I come down to their office.

Q     Okay. And you came down to their office?

A      Yes, I did sir.

Q     And they started to ask you about the truck?

A     Yes.

Q     They started to ask you about the bank robbery?

A     Yes.

Q     What did you tell them about the truck?

A     I told them the truck was stolen.

Q     What else did you tell them?

A     Then the detective showed me some pictures and asked me to identify the guy on the picture and I told him I could not.

Q     And you could not, isn't that correct?

Mr. Allen:     Judge, I object. That's not what the witness said. The witness said he told him he couldn't identify him.

Court:  I'll overrule the objection.

Q     Did you recognize anyone in that photo show up?

A     Yes.

11

Q       Who did you recognize?

A       Robert.

Q       The first time they showed you pictures?

A       Yeah.

Q       When you were talking to Mr. Hernandez he didn't believe you, did he?

Mr. Allen:      Judge, objection speculation.

Court: I'll sustain the objection.

A       No.

Mr. Lopez:      Did Mr. Hernandez say anything to you regarding his opinion of
                your honesty?

Mr. Allen:      Same objection, Judge.

The Court:      I'll sustain the objection.

Mr. Lopez:      Your Honor, may we approach for a moment?

Court:          No, sir.

Q       Mr. Rodriguez, when you were talking to Mr. Hernandez, were you
        nervous?

A       I was scared, yes.

Q       And what made you scared?

A       Just being in the environment and the way they was conducting their
        interview.

Q       Did he threaten you?

A       No.

Q       Did he tell you you were going to go to jail?

12

A Not in those words, no.

Q Did he tell you you were going to be charged with robbery?

A Yes.

Q Did he tell you that it was a life felony?

Mr. Allen: Judge, Objection. This is hearsay, and irrelevant.

Court: I'll sustain the objection.

Q What else did he tell you?

Mr. Allen: Judge, I'm going to object as to hearsay at this point.

Court: I'll sustain the objection.

Q Mr. Rodriguez, you're married?

A Yes, sir.

Q Do you have any children?

A I have two boys

Q How many different times did you go back to the police?

A A bunch of times, too many to recall.

Q It was six or seven times, wasn't it?

A Yes.

Q And all this time you had not been charged, it that correct?

A Yes.

Q And you have not been arrested.

A Yes.

Q When you went to the police did you go voluntarily six or seven times or



were you called or taken there?

A No, I went voluntarily.

Q You went voluntarily?

A Yes.

Q Six or seven times?

A Yes.

Q Did they call you and ask you to come down?

A Yes, they called the house and told my wife, because I was at work, that I needed to go see them. And that's what I did, I went and seen them.

Q And you did that because you were scared?

A Yes.

Q Eventually you changed the story that you were telling then [sic], is that correct?

A Yes.

Q And that story changed this year, did it not, in a statement that you gave to Mr. Allen?

A I can't really remember.

Q Okay, You made a proffer to Mr. Allen on March 23rd, 2001. Does that recall - -does that refresh your recollection of that?

A Yes.

(Transcript, Vol. III, September 25, 2001, pages 211-215, attached). A further review of the record reveals that on the State's redirect of Jose Rodriguez, Mr. Rodriguez again admitted that he did not initially tell law enforcement the truth regarding the robbery. Mr. Rodriguez specifically testified. as follows:

Q When you gave your statement to me under oath and again to Mr. Lopez you've already told this jury when you first - - the first few times when you

talked to the police you were scared and you admitted you didn't tell them the truth, right?

A      Yes.

(See Transcript, Vol. III, September 25, 2001, page 219, attached).

After reviewing Defendant's Motion, the testimony and evidence presented at the November 22, 2004 hearing, the court file, and the record, the Court finds that Mr. Lopez did not have any legal basis to move to exclude or strike the testimony of Jose Rodriguez. The Court further finds that Mr. Lopez effectively cross examined Mr. Rodriguez as to the false statements he gave to law enforcement regarding the robbery, and effectively cross examined Mr. Rodriguez regarding the fact that he denied knowing the name of the robber and claimed to have met him on the morning of the robbery. The Court finds, Mr. Lopez credible, while Defendant is not.

Consequently, the Court finds that Defendant has failed to meet the second prong of *Strickland* in that he has failed to prove how he was prejudiced by Mr. Lopez' failure to exclude or strike Mr. Rodriguez' testimony based on numerous false statements and false version of the robbery to police and the failure to challenge Mr. Rodriguez when he denied knowing the name of the robber and claimed to have met him the morning of the robbery since Mr. Lopez had no legal basis to move to exclude the testimony of Jose Rodriguez and Mr. Lopez effectively cross examined Mr. Rodriguez on such issues. Moreover, the Court finds that since Defendant has failed to meet the second prong of *Strickland*, it is unnecessary to address the performance component. As such, no relief is warranted on this portion of ground 1(a).

As to Defendant's claim that counsel should have challenged Jose Rodriguez when he stated that the robber wore a short sleeve shirt and there were no tattoos on the robber's arm, and that Defendant had a large dark tattoo on his left forearm, a review of the record reflects that Mr. Lopez did question Mr. Rodriguez on the issue as follows:

Q      And what was Robert Rye wearing?

A      He had some blue jeans on, he had a dark colored shirt on, I didn't know what kind of shoes he had on.

Q      He had a short-sleeve shirt or long-sleeve shirt on?

A      Short-sleeve shirt.

15

Q       Short-sleeve shirt. Did you ever see Mr. Ryes's arms?

A       Did I see his arms?

Q       Yes.

A       Yes, I seen his arms.

Q       Okay. What if anything is on his arms?

A       Nothing. I ain't see no marks or nothing like that.

Q       You haven't seen any marks?

A       No.

Q       Have you seen any tattoos on his arms?

A       Huh-uh.

Q       No? Is that the answer, no?

A       Yes. No.

(See Transcript, Vol. II, September 24, 2001, pages 186-187, attached). Therefore, the Court finds that Mr. Lopez did question Mr. Rodriguez at trial regarding the tattoo on Defendant's arm. The Court finds that based on Mr. Rodriguez' responses, Mr. Lopez had no basis to challenge or impeach such testimony. The Court finds that Mr. Lopez effectively cross examined Mr. Rodriguez at trial. The Court finds that Mr. Lopez had Defendant come forward and display the tattoo on his arm to the jury during trial. (See Transcript, Vol. III, September 25, 2001, page 240, attached). Moreover, the Court finds Mr. Lopez credible, while Defendant is not.

        Consequently, the Court finds that Defendant has failed to meet the second prong of *Strickland* in that he has failed to prove how he was prejudiced by Mr. Lopez' failure to challenge Jose Rodriguez when he stated that the robber wore a short sleeve shirt and there were no tattoos on the robbers arm, and that Defendant had a large dark tattoo on his left forearm since Mr. Lopez did not have a legal basis to move to exclude or strike Jose Rodriguez' testimony, Mr. Lopez did question Mr. Rodriguez regarding the type of clothing Defendant was wearing and whether there were any tattoos on Defendant, and Mr. Lopez further presented to the jury the tattoo on Defendant's arm. Moreover, the Court finds that since

16

Defendant has failed to meet the second prong of *Strickland*, it is unnecessary to address the performance component. As such, no relief is warranted on this portion of ground 1(a).

As to Defendant's claim that a polygraph test of Jose Rodriguez proves Mr. Rodriguez lied when he denied knowing the name of the person that robbed the bank, and denied receiving any money from the robber, the Court notes that as to the admissibility of the polygraph results, "absent stipulation of the parties, polygraph exam results are not admissible." *See Schmidt v. Hunter*, 788 So. 2d 322 (Fla. 2nd DCA 2001) (citing *Davis v. State*, 520 So. 2d 572 (Fla. 1988)).

After reviewing the Motion, the testimony and evidence presented on November 22, 2004, the court file, and the record, the Court finds that no testimony or evidence was presented in support of this portion of ground 1(a). However, at the November 22, 2004 evidentiary hearing, Defendant and State stipulated that the factual matter set forth in the Court's Order to Respond to Motion for Post Conviction Relief, filed on August 12, 2003, are those alleged by the defense at the November 22, 2004 evidentiary hearing. (See Transcript, November 22, 2005, pages 120-121, attached). Additionally, the Court finds Mr. Lopez to be credible, while Defendant is not. Furthermore, no evidence has been presented to indicate that the polygraph test results of Jose Rodriguez are admissible. The Court further finds that Mr. Lopez did not have any legal basis to move to exclude Jose Rodriguez' testimony based on polygraph test of Mr. Rodriguez. Therefore, the Court finds that Defendant has failed to meet the second prong of *Strickland*, in that he has failed to prove how he was prejudiced by Mr. Lopez' failure to move to exclude or strike Jose Rodriguez' testimony based on a polygraph test of Jose Rodriguez. As such, no relief is warranted on this portion of ground 1(a).

(Respondent's Ex. 9 at pp. 3-14).

Initially, the state court found defense counsel's testimony during the evidentiary hearing credible, and rejected Rye's credibility. A federal habeas court "must accept the state court's credibility determination..." *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998), *cert. denied*, 526 U.S. 1047 (1999).

The state court determined that there would not have been a valid basis on which to exclude Rodriguez's testimony. The Court must accord great deference to a state court

evidentiary ruling and should rarely grant habeas relief on the basis of such a ruling. *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986): *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984). Only when a state evidentiary ruling violates federal constitutional standards may it provide the basis for habeas corpus relief. *Jones v. Kemp*, 794 F.2d 1536 (11th Cir. 1986). The federal constitution is violated when a state evidentiary ruling results in a proceeding that is fundamentally unfair. *Smith v. Wainwright*, 741 F.2d 1248, 1258 (11th Cir. 1984). The denial of a fundamentally fair proceeding occurs when erroneously admitted evidence is "material in the sense of a crucial, critical, highly significant factor." *Demps, supra: Boykins, supra.* The State has a right to call witnesses, including an accomplice, to testify against a defendant. *See Hunt v. State*, 613 So. 2d 893 (Fla. 1992). Rye does not demonstrate that Rodriguez's testimony should have been excluded, and that the testimony rendered his trial fundamentally unfair. Moreover, to the extent Rye asserts that counsel should have moved to exclude Rodriguez's testimony on the ground that Rodriguez failed a polygraph test, in Florida "the results of a polygraph examination are inadmissible because they have not been shown to be sufficiently reliable to warrant their use in judicial proceedings." *Rosa v. State*, 27 So. 3d 718, 722 (Fla. 4th DCA 2010) (citing *United States v. Scheffer*, 523 U.S. 303, 309 (1998); *Davis v. State*, 520 So. 2d 572 (Fla. 1988)). Rye wholly fails to show that counsel had any legal basis to move to exclude Rodriguez's testimony based on the results of Rodriguez's polygraph test.

Further, defense counsel extensively cross-examined Rodriguez regarding his false statements to the police regarding the robbery. He also effectively cross-examined Rodriguez regarding his failure to see a tattoo on Rye's arm when Rye was wearing a short-sleeve shirt.

The state court's ruling was neither an unreasonable application of *Strickland* nor an

18

unreasonable determination of the facts. Accordingly, Ground One does not merit relief.

Ground Two

In Ground Two, Petitioner complains that counsel was ineffective in failing to move to suppress Rodriguez's identification of Rye as the robber on the ground that the out of court identification procedure was unduly suggestive and unreliable. Rye states that several months after the robbery, a detective showed Rodriguez photographs then asked if "this is the one that robbed the bank." Rye argues that because this identification procedure was unduly suggestive, and because of Rodriguez's numerous false statements, inaccurate initial description of the robber, delayed identification, inability to identify the robber on the videotape, and the pending robbery charges against Rodriguez, counsel was ineffective in failing to move to suppress Rodriguez's out of court identification of Rye as the robber.[5]

Rye was afforded an opportunity to develop his ground, and he failed to establish his underpinnings. In denying Rye's Rule 3.850 claim after an evidentiary hearing, the state court held, in relevant part, as follows:

> Therefore the Court finds that Mr. Lopez did question Mr. Rodriguez regarding his identification of Defendant. Moreover, the Court finds that there was no legal basis to move to suppress such testimony. The Court further finds, Mr. Lopez credible, while Defendant is not.
>
> Consequently, the Court finds that Defendant has failed to meet the second prong of *Strickland* in that he has failed to prove how he was prejudiced by Mr.

---

[5] His underlying substantive issue is procedurally barred because Rye did not preserve a constitutional claim regarding admission of evidence concerning the pretrial identification procedure by contemporaneous objection at trial and then raise the claim on direct appeal. *See e.g., Johnson v. Singletary*, 647 So.2d 106, 109-110 (Fla. 1994)(denying post-conviction movant's claim of an unduly suggestive and unreliable identification procedure as procedurally barred); *Green v. State*, 711 So.2d 69, 70 (Fla. 4th DCA 1998) (although defendant moved to suppress identification prior to trial, he did not renew his objection at trial; his failure to object at trial to admission of contested evidence waived his right to claim on appeal evidence was erroneously admitted).

Lopez' failure to suppress identification by Jose Rodriguez based on the fact that Mr. Rodriguez did not identify Defendant as the robber until several months after the crime when a detective showed him pictures and asked, "this is the one that robbed the bank," since Mr. Lopez had no legal basis to move to suppress such evidence and Mr. Lopez effectively cross examined Mr. Rodriguez regarding his identification of Defendant. Moreover, the Court finds that since Defendant has failed to meet the second prong of *Strickland*, it is unnecessary to address the performance component. As such, no relief is warranted on this portion of ground 1(b).

* * *

As to Defendant's claim that Mr. Lopez should have moved to suppress the identification of Defendant made by Jose Rodriguez based on the suggestive and improper methods detectives used on Mr. Rodriguez to identify Defendant, Mr. Rodriguez' inaccurate initial description of the robber, Mr. Rodriguez' numerous false statements, the fact that Mr. Rodriguez was facing the possibility of being charged with robbery, and the fact that Mr. Rodriguez previously viewed the videotape and could not identify the robbery [sic], the Court finds after reviewing the Motion, the testimony and evidence presented on November 22, 2004, the court file, and the record, the Court finds that no testimony or evidence was presented in support of this portion of ground 1(b). However, at the November 22, 2004 evidentiary hearing, Defendant and State stipulated that the factual matter set forth in the Court's Order to Respond to Motion for Post Conviction Relief, filed on August 12, 2003, are those alleged by the defense at the November 22, 2004 evidentiary hearing. (See Transcript, November 22, 2005, pages 120-121, attached). Moreover, the Court finds Mr. Lopez to be credible, while Defendant is not. The Court finds that Mr. Lopez had no legal basis to move to suppress Mr. Rodriguez' identification of Defendant. Therefore, the Court finds that Defendant has failed to meet the second prong of *Strickland*, in that he has failed to prove how he was prejudiced by Mr. Lopez' failure to move to suppress the identification of Defendant made by Jose Rodriguez based on the suggestive and improper methods of detectives used on Mr. Rodriguez to identify Defendant, Mr. Rodriguez' inaccurate initial description of the robber, Mr. Rodriguez' numerous false statements, and the fact that Mr. Rodriguez previously viewed the videotape and could not identify the robbery. As such, no relief is warranted on this portion of ground 1(b).

(Respondent's Ex. 9 at pp. 14-19).

Petitioner asserts that a detective (Petitioner does not identify the name of the detective)

showed Rodriguez photographs and asked if "this is the one that robbed the bank." (Dkt. 2 at p. 6).

Petitioner did not present any evidence during the state evidentiary hearing on his Rule 3.850 motion to develop this claim, such as calling Rodriguez or the detective to testify regarding the circumstances surrounding Rodriguez's identification of Petitioner.  Petitioner does not allege or demonstrate that Rodriguez was looking at his photograph when the detective allegedly asked if "this is the one that robbed the bank."  Nor does he allege that the detective singled out Petitioner's photograph and stated "this is the one that robbed the bank."  The photographs depicted white males having similarities such as dark hair and glasses (Dkt. 32-2 at p. 6).  An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation with regard to counsel's performance. *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999).

With respect to Petitioner's underlying issue, the Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972), held that the central issue to be decided regarding witness identification is whether, under the totality of circumstances, the identification was reliable even though the confrontation procedure was suggestive.  Factors to consider when determining the likelihood of misidentification include: opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id*. at 199-200.

Rye fails to show that not one reasonably competent attorney would conclude that under the totality of the circumstances, Rodriguez's identification of Rye was reliable.  Rodriguez testified that on the day of the robbery he had been with Rye at the labor pool, and they drove together to the bank that was robbed.  Rodriguez also testified that he had lied to the detectives when he initially told them that he did not recognize Rye.  Defense counsel also testified that Rye had admitted to him, in

21

hypothetical terms, that he was with Rodriguez on the day of the robbery. Thus, it is objectively reasonable to conclude that under the totality of the circumstances, defense counsel was not ineffective in failing to move to suppress Rodriguez's identification testimony because the photopack identification procedure employed in Rye's case did not create a substantial risk of irreparable misidentification.

Moreover, Ground Two can be disposed of on *Strickland*'s prejudice prong without addressing the deficiency prong. In light of Rodriguez's sufficient opportunity to view Rye on the day of the crime, it is objectively reasonable to conclude the identification evidence was reliable. Accordingly, Rye fails to show that there was any reasonable probability of a different outcome had counsel filed the proposed motion to suppress.

The state court's ruling was neither an unreasonable application of *Strickland* nor an unreasonable determination of the facts. Accordingly, Ground Two does not merit relief.

Ground Three

In Ground Three, Petitioner complains that counsel was ineffective in failing to present the circumstances of Rodriguez's out-of-court identification to the jury. Specifically, Petitioner asserts that during cross-examination counsel should have elicited from Rodriguez that he previously could not identify Petitioner as the perpetrator on the videotape of the robbery, and that there were pending charges against Rodriguez for the same robbery. (Dkt. 2 at p. 8).

In denying Rye's Rule 3.850 claim after an evidentiary hearing, the state court held as follows:

> In ground 1( c), Defendant alleges ineffective assistance of counsel for failing to present evidence to the jury. Specifically, Defendant claims that counsel failed to present and/or argue the circumstances underlying Jose Rodriguez' identification to

the jury. Defendant claims that when counsel cross examined Mr. Rodriguez, counsel failed to elicit testimony that he previously could not identify Defendant from the videotape, was facing the possibility of being charged with robbery, or that the identification of Defendant was made when a detective showed him pictures and asked if, "this is the one that robbed the bank." Defendant further alleges that counsel should have impeached Jose Rodriguez with his deposition testimony. Moreover, Defendant claims that counsel's ineffective assistance of counsel prejudiced Defendant because the evidence would have shown the jury that Jose Rodriguez' identification was unreliable and/or coerced. Defendant alleges that a vigorous challenge of identification and credibility should have been prepared for Jose Rodriguez' testimony. Therefore, Defendant contends that the jury would have discredited Jose Rodriguez' testimony, and the outcome of the case would have been different.

After reviewing Defendant's Motion, the testimony and evidence presented at the November 22, 2004 hearing, the court file, and the record, a review of the record reflects that Mr. Lopez did present and/or argue circumstances relating to Jose Rodriguez' identification to the jury through cross examination. (See Transcript, Vol. II, September 24, 2001, pages 174-193; Transcript, Vol III, September 25, 2001, pages 199-221, attached).

As to Defendant's argument that when counsel cross examined Mr. Rodriguez, counsel failed to elicit testimony that Mr. Rodriguez previously could not identify Defendant from the videotape, the Court finds that after reviewing the Motion, the testimony and evidence presented on November 22, 2004, the court file, and the record, the Court finds that no testimony or evidence was presented in support of this portion of ground 1( c). However, at the November 22, 2004 evidentiary hearing, Defendant and State stipulated that the factual matter set forth in the Court's Order to Respond to Motion for Post Conviction Relief, filed on August 12, 2003, are those alleged by the defense at the November 22, 2004 evidentiary hearing. (See Transcript, November 22, 2005, pages 120-121, attached). Moreover, the Court finds Mr. Lopez to be credible, while Defendant is not. Therefore, the Court finds that Defendant has failed to meet the second prong of *Strickland*, in that he has failed to prove how he was prejudiced by Mr. Lopez' failure to elicit testimony that Mr. Rodriguez previously could not identify Defendant from the videotape. As such, no relief is warranted on this portion of ground 1( c).

As to Defendant's argument that when counsel cross examined Mr. Rodriguez, counsel failed to elicit testimony that he was facing the possibility of being charged with robbery, the Court finds that it previously addressed this claim above in ground 1(b). Moreover, the Court finds that Mr. Lopez effectively cross examined Mr. Rodriguez at trial. The Court finds that Mr. Lopez had no legal basis to move to suppress Mr. Rodriguez' identification of Defendant. The Court further

23

finds Mr. Lopez credible, while Defendant is not. As such, Defendant has failed to meet the second prong of *Strickland* and no relief is warranted on this portion of ground 1( c).

As to Defendant's argument that when counsel cross examined Mr. Rodriguez, counsel failed to elicit testimony that the identification of Defendant was made when a detective showed him pictures and asked if, "this is the one that robbed the bank," the Court finds that it previously addressed this claim above in ground 1(b). Moreover, the Court finds that Mr. Lopez effectively cross examined Mr. Rodriguez at trial. The Court finds Mr. Lopez had no legal basis to move to suppress Mr. Rodriguez' identification of Defendant. The Court further finds Mr. Lopez credible, while Defendant is not. As such, Defendant has failed to meet the second prong of *Strickland* and no relief is warranted on this portion of ground 1( c).

As to Defendant's argument that counsel should have impeached Jose Rodriguez with his deposition testimony, the Court finds that after reviewing the Motion, the testimony and evidence presented on November 22, 2004, the court file, and the record, the Court finds that no testimony or evidence was presented in support of this portion of ground 1( c). However, at the November 22, 2004 evidentiary hearing, Defendant and State stipulated that the factual matter set forth in the Court's Order to Respond to Motion for Post Conviction Relief, filed on August 12, 2003, are those alleged by the defense at the November 22, 2004 evidentiary hearing. (See Transcript, November 22,2005, pages 120-121, attached). The Court finds that Mr. Lopez effectively cross examined Mr. Rodriguez at trial. Moreover, the Court finds Mr. Lopez to be credible, while Defendant is not. Therefore, the Court finds that Defendant has failed to meet the second prong of *Strickland*, in that he has failed to prove how he was prejudiced by Mr. Lopez' failure to impeach Jose Rodriguez with his deposition testimony. As such, no relief is warranted on this portion of ground 1( c).

(Respondent's Ex. 9 at pp. 19-21).

During the state evidentiary hearing, Petitioner did not present any testimony or evidence to support this claim. (Respondent's Ex. 9). The state court correctly found that defense counsel extensively cross-examined Rodriguez regarding his identification of Petitioner as the perpetrator of the robbery. (Respondent's Ex. 25, Vol. III at pp. 174-92; Vol. II at pp. 197-221). During trial, Rodriguez testified that on the first occasion when the detective showed him photographs of suspects, Rodriguez recognized Rye, but told the detective that he could not identify anyone in the

24

photographs (Respondent's Ex. 25 Vol. II at p. 212).  He also testified that he was charged with robbery and accessory after the fact (Id. at p. 216).

Even if defense counsel was deficient in handling this issue, relief would not be warranted because Rye has failed to demonstrate prejudice. Rodriguez identified Petitioner from a photopack as well as in court. Rodriguez had ample opportunity to identify Rye because they were co-perpetrators, and he drove Rye to and from the scene of the crime. The identification was corroborated by Rye's fingerprints on the demand note handed to the bank teller.  Different handling of the cross-examination of Rodriguez would not probably have changed the outcome of trial. *See Routly v. Singletary*, 33 F.3d 1279, 1289 (11th Cir. 1994) (no prejudice resulted from counsel's failure to more fully explore areas of cross-examination).

The state court's rejection of this ground is not contrary to or an unreasonable application of *Strickland*.  Accordingly, Ground Three does not warrant relief.

Ground Four

In Ground Four, Rye complains that defense counsel was ineffective in abandoning his defense theory of misidentification by inadequately cross-examining and impeaching Rodriguez regarding his identification of Rye as the perpetrator of the robbery.  In denying Rye's Rule 3.850 claim after an evidentiary hearing, the state court held as follows:

> After reviewing Defendant's Motion, the testimony and evidence presented at the November 22, 2004, hearing, the court file, and the record, the Court finds that Mr. Lopez' theory of defense throughout Defendant's trial was mistaken identity. (See Transcript, November 22, 2004, pages 6-7, 30 attached). Therefore, the Court finds that Mr. Lopez did not abandon the theory of mistaken identity. As such, Defendant has failed to meet the first prong of *Strickland* and no relief is warranted on this portion of ground 1(d).
>
> As to Defendant's argument that when counsel cross examined Jose

25

Rodriguez, he conceded to Defendant's identification as the robber and to Defendant's claim that counsel elicited damaging testimony from Mr. Rodriguez, the Court finds that Mr. Lopez effectively cross examined Mr. Rodriguez and Mr. Lopez did not concede to Defendant's identification as the robber. (See Transcript, Vol. II, September 24, 2001, pages 174-193; Transcript, Vol. III, September 25, 2001, pages 193-220, attached). The Court further finds Mr. Lopez credible, while Defendant is not.

Consequently, the Court finds that Defendant has failed to meet the first prong of *Strickland* in that he has failed to prove how Mr. Lopez abandoned the defense theory of mistaken identity and/or failing to reasonably cross examine and impeach Jose Rodriguez was deficient when Mr. Lopez did not abandon the theory of mistaken identity and effectively cross examined Jose Rodriguez at trial. Moreover, the Court finds that since Defendant has failed to meet the first prong of *Strickland*, it is unnecessary to address the prejudice component. As such, no relief is warranted on this portion of ground 1(d).

(Respondent's Ex. 9 at pp. 21-23).

Defense counsel's theory of defense was that Rye was misidentified as the perpetrator of the robbery. He extensively cross-examined Rodriguez and Ms. Burkhardt, the bank teller who was robbed, regarding their identification of Rye as the perpetrator. (Respondent's Ex. 25, Vol. III at pp. 109-22, 124-26, 174-92; Vol. II at pp. 197-221, 224-29). In light of the record, the state court's determinations that defense counsel did not abandon the misidentification defense, and effectively cross-examined Rodriguez on the matter were not objectively unreasonable.

The state court's rejection of this ground is not contrary to or an unreasonable application of *Strickland*. Accordingly, Ground Four does not warrant relief.

Ground Five

In Ground Five, Rye complains that defense counsel was ineffective in failing to ask Rodriguez during cross-examination whether he identified Rye as the perpetrator to cover-up for a Hispanic friend. Rye asserts that it could reasonably be inferred from Ms. Burkhardt's testimony that

26

the perpetrator of the robbery was "Hispanic" and had "dark-olive" skin, that Rodriguez identified Rye as the perpetrator to "cover-up" for a Hispanic friend.

During the Rule 3.850 evidentiary hearing, Rye did not present any evidence to support this claim. Nor does he present any evidence here to support this claim. Counsel is not ineffective in failing to raise a defense that has no factual basis. Further, Petitioner does not show any prejudice because he fails to demonstrate that had counsel asked Rodriguez whether he identified Rye to cover-up for a Hispanic friend, Rodriguez would have admitted to doing so. His assertion that Rodriguez was covering up for a Hispanic friend is wholly speculative. *See Johnson v. Alabama*, 256 F.3d 1156, 1183 (11th Cir. 2001) ("pure speculation" is insufficient to demonstrate ineffective assistance of counsel).

The state court's rejection of this ground is not contrary to or an unreasonable application of *Strickland*. Accordingly, Ground Five does not warrant relief.

Ground Six

In Ground Six, Rye complains that counsel was ineffective in failing to file a pre-trial motion in limine to prohibit Ms. Burkhardt's in-court identification of Rye as the perpetrator of the robbery. (Dkt. 33 at p. 11). In denying this claim, the state court held, in pertinent part, as follows:

> Mr. Lopez testified that Ms. Burkhardt's identification of Defendant did not become an issue until the time of trial. (See Transcript, November 22, 2004, page 33, attached). Mr. Lopez further testified that Mr. Burkhardt never identified Defendant as the robber until the day of trial. (See Transcript, November 22, 2004, pages 29-30, attached). Mr. Lopez testified that he felt that Ms. Burkhardt was a valuable witness to the defense based on the horrible description she provided of Defendant. (See Transcript, November 22, 2004, page 74, attached). Mr. Lopez testified that he never believed Ms. Burkhardt would change her description of Defendant at trial. (See Transcript, November 22, 2004, page 74, attached). Furthermore, Mr. Lopez testified that he recalled making an objection when Ms. Burkhardt did change her description of Defendant and identified Defendant during trial. (See Transcript, November 22,

2004, pages 73-74, attached).

A review of the record reflects the following:

Q Who did you recognize?

A I recognized that man.

Mr. Allen: Your Honor, may the record reflect that the witness had identified the defendant?

Mr. Lopez: Your Honor - -

Court: I'll overrule the objection. Do you have an objection, Mr. Lopez?

Mr. Lopez: No, Your Honor.

(See Transcript, Vol. III, September 25, 2001, page 222, attached). Mr. Lopez further testified that he did not believe there was any basis to exclude Mr. Burkhardt's in-court identification of Defendant.

After reviewing the Motion, the testimony and evidence presented at the November 22, 2004 hearing, the court file, and the record, the Court finds that Mr. Lopez had no basis to file a pretrial motion to prohibit Ms. Burkhardt's in-court identification of Defendant. The Court finds that Ms. Burkhardt's in-court identification of Defendant did not become an issue until trial. The Court finds that Mr. Lopez believed that Ms. Burkhardt would be a valuable witness for the defense based on her horrible description of Defendant. The Court further finds that after Ms. Burkhardt changed her previous description of Defendant and identified him at trial, Mr. Lopez attempted to object to Ms. Burkhardt's in-court identification of Defendant.

Consequently, the Court finds that Defendant has failed to meet the second prong of *Strickland* in that he has failed to prove how Mr. Lopez' failure to file a pretrial motion to prohibit in-court identification of Ms. Burkhardt resulted in prejudice, when such in-court identification did not become an issue until trial, Mr. Lopez believed Ms. Burkhardt would be a valuable witness for Defendant, and when Mr. Burkhardt did change her description of Defendant and identified Defendant at trial, Mr. Lopez appeared to object to such testimony. Moreover, the Court finds that since Defendant has failed to meet the second prong of *Strickland*, it is unnecessary to address the performance component. As such, no relief is warranted on ground 1(f).

28

(Respondent's Ex. 9 at pp. 24-26).

During the evidentiary hearing, defense counsel testified that Ms. Burkhardt's pre-trial description of the man who robbed her did not even come close to matching Rye's physical features (Respondent's Ex. 8 at p. 69). Thus, defense counsel believed Ms. Burkhardt was a valuable witness for the defense (Id. at p. 74). It "[n]ever crossed [his] mind" that she would change her description and identify Rye as the perpetrator (Id.).[6] Prior to trial, Ms. Burkhardt never had identified Petitioner as the perpetrator of the robbery. (Respondent's Ex. 25, Vol. II at p. 229).

The state court's determination that counsel was not deficient in failing to file a pre-trial motion in limine to exclude Ms. Burkhardt from identifying Rye as the perpetrator was not objectively unreasonable. Before trial, Ms. Burkhardt never had identified Rye. Moreover, her description of the perpetrator of the robbery was beneficial to the defense because it did not come close to resembling Rye. As the state court noted, "Ms. Burkhardt's in-court identification of Defendant did not become an issue until trial." Consequently, Rye fails to demonstrate counsel was deficient in failing to file a motion in limine to exclude Ms. Burkhardt's in-court identification of Rye as the perpetrator.

Moreover, Rye does not show prejudice. The state court determined that defense counsel had no basis to file a motion in limine to prohibit Ms. Burkhardt's in-court identification of Rye. Thus, he cannot show that had counsel filed a motion, the state court would have granted it.

The state court's rejection of this ground is not contrary to or an unreasonable application of *Strickland*. Accordingly, Ground Six does not warrant relief.

---

[6]In fact, during the State's direct examination, Ms. Burkhardt described the perpetrator as "Hispanic" and having "olive skin." (Respondent's Ex. 25, Vol. III at p. 100).

Ground Seven

In Ground Seven, Rye complains that counsel was ineffective in failing to object to, and move for a mistrial when the State recalled Ms. Burkhardt for the sole purpose of identifying Rye as the man that robbed her. In denying this claim, the state court held as follows:

> In ground 1(g), Defendant claims that counsel was ineffective for failing to object an/or move for a mistrial. Specifically, Defendant alleges that counsel should have moved to eliminate the in-court identification of Ms. Burkhardt or moved for a mistrial based on the circumstances Defendant argued in ground 1(f). Defendant contends that if counsel objected to Ms. Burkhardt's identification of Defendant or moved tor a mistrial, the outcome of the trial would have been different. Moreover, Defendant alleges that if counsel made the appropriate objection or moved for a mistrial and the court denied counsel's request, the Defendant could have raised the issue on appeal and an appellate court would have reversed the case for a new trial.

> After reviewing the Motion, the testimony and evidence presented at the November 22, 204 hearing, the court file, and record, the Court finds as it previously found above in ground 1(f), that the record reflects that Mr. Lopez appeared to make an objection during trial after Ms. Burkhardt identified Defendant. The record specifically reflects the following:

> Q Who did you recognize?

> A I recognized that man.

> Mr. Allen: Your Honor, may the record reflect that the witness had identified the Defendant?

> Mr. Lopez: Your Honor - -

> Court: I'll overrule the objection. Do you have an objection, Mr. Lopez?

> Mr. Lopez: No, Your Honor.

(See Transcript, Vol. III, September 25, 2001, page 222, attached). The Court further finds that after Ms. Burkhardt identified Defendant, Mr. Lopez cross examined Ms. Burkhardt regarding her identification of Defendant and the problems with her description of Defendant. (See Transcript, November 22, 2004, pages 223-229, attached). Moreover, the Court finds that Ms. Burkhardt's in-court identification of Defendant was not a sufficient reason to request a mistrial.

Consequently, the Court finds that Defendant has failed to meet the second prong of *Strickland* in that he had failed to prove how Mr. Lopez' failure to make additional objections on behalf of Defendant regarding Ms. Burkhardt's in-court identification and Mr. Lopez' failure to move for a mistrial resulted in prejudice when Mr. Lopez did make an objection on the record when Ms. Burkhardt identified Defendant in court and such testimony was not a sufficient basis for a mistrial. As such, no relief is warranted on ground 1(g).

(Respondent's Ex. 9 at pp. 26-27).

Rye does not show counsel's performance was deficient in failing to object to, or move for a mistrial when Ms. Burkhardt identified Rye at trial as the man who robbed her. First, the state court's determination that counsel attempted to object to Ms. Burkhardt's identification of Rye is not an unreasonable determination of the facts. As defense counsel stated "Your Honor," the judge clearly anticipated defense counsel's objection to Ms. Burkhardt's identification of Rye, and overruled the objection. Even though the judge subsequently asked defense counsel if he had an objection, defense counsel did not object because the judge already indicated that an objection would be overruled. Moreover, Rye does not identify any legal basis for an objection.

Second, even if defense counsel had expressed a basis for the objection at that time, or moved for a mistrial, Rye does not establish that the objection or motion would have merit and would have been granted. Rye argues that "the Court would have been bound under applicable law to grant" either the objection or a mistrial. (Dkt. 33 at pp. 12-13). Rye does not, however, indicate on what basis the objection or a mistrial would have been granted. Nor does he support his claim with any case law.

In his state Initial Brief on appeal from the denial of his Rule 3.850 motion, Rye indicated that the State's "failure to disclose this new revelation [Ms. Burkhardt's identification of Rye] to defense counsel before she blurted out her identification to the jury...was a discovery violation of

monumental proportion under *Richardson*..." (Respondent's Ex. 10 at p. 32).  He asserted that

defense counsel should have objected and "asked for a *Richardson* hearing..." (Id.).  Rye, however,

made no effort either in his Initial Brief or in his memorandum of law in support of his federal

habeas petition to explain what a "*Richardson* hearing" is, and how it would have successfully led

to exclusion of Ms. Burkhardt's in-court identification.

In *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), the Florida Supreme Court set forth a

mandatory procedure to be followed by the trial court in the event of a discovery violation.  The

procedure is executed in two steps:

> The trial judge must first determine whether the state violated the discovery rules.
> *See Sinclair v. State*, 657 So. 2d 1138, 1140 (Fla. 1995). If a violation occurred, the
> judge must then assess "whether the state's violation was inadvertent or willful,
> whether the violation was trivial or substantial, and most importantly, what effect,
> if any, did it have upon the ability of the defendant to properly prepare for trial."
> *Richardson* 246 So. 2d at 775 (quoting *Ramirez v. State*, 241 So. 2d 744, 747 (Fla.
> 4th DCA 1970)).

*Curry v. State*, 1 So. 3d 394, 397 (Fla. 1st DCA 2009).

Rye's claim fails because he does not identify a specific violation of the discovery rules.

Thus, he fails to demonstrate that had counsel requested a *Richardson* hearing, the trial court would

have excluded Ms. Burkhardt's in-court identification or granted a new trial.  Accordingly, he fails

to show both that counsel's performance was deficient, and prejudice.

The state court's rejection of this ground is not contrary to or an unreasonable application of

*Strickland*.  Accordingly, Ground Seven does not warrant relief.

Ground Eight

In Ground Eight, Rye complains counsel was ineffective in failing to agree to release Ms.

Burkhardt from her subpoena.  Following the State's direct examination of Ms. Burkhardt, the State

requested the court release Ms. Burkhardt from her subpoena. (Respondent's Ex. 25, Vol. III at p.

1 26). Defense counsel asked "may we excuse her subject to re-calling her?" (Id. at p. 127). The

court replied "Yes, sir. She'll have to leave the courtroom then." (Id.). Rye asserts that defense

counsel's decision not to release Ms. Burkhardt allowed the State to recall her, and gave her the

opportunity to identify Rye as the man who robbed her.

>    In denying this claim, the state court held as follows:

>    In ground 1(h), Defendant claims ineffective assistance of counsel for failing
>    to agree to release Ms. Burkhardt from a subpoena. Specifically, Defendant contends
>    that when Ms. Burkhardt testified for the State, she did not identify Defendant as the
>    robber. After Ms. Burkhardt testified for the State, the State agreed to release Ms.
>    Burkhardt. However, Defendant alleges that counsel would not agree to release her
>    because counsel was worried about establishing the State's case. Therefore,
>    Defendant alleges that if his counsel would have agreed to release Ms. Burkhardt
>    after she first testified, she would have been allowed to sit in the courtroom, listen
>    to the proceedings, and would have been prevented from testifying again. Moreover,
>    Defendant claims that if Ms. Burkhardt was not called to testify a second time, she
>    would not have identified the Defendant as the robber and the outcome of the
>    case would be different.

>    Mr. Lopez testified at the November 22, 2004 evidentiary hearing that he
>    made a strategic decision to keep Ms. Burkhardt as a witness based on the fact that
>    Ms. Burkhardt's testimony was so contradictory to the other facts and evidence. (See
>    Transcript, November 22, 2004, page 75, attached). Mr. Lopez testified that if he
>    released Ms. Burkhardt, the State could have recalled her if the State chose to. (See
>    Transcript, November 22, 2004, page 75, attached). Mr. Lopez further testified that
>    he generally does not release the victim from a subpoena during trial. (See Transcript,
>    November 22, 2004, page 33, attached).

>    However, "tactical or strategic decisions of counsel do not justify post
>    conviction relief." *Gonzalez v. State*, 579 So. 2d 145, 145 (Fla. 3d DCA 1991).
>    "[E]ven where the tactical decision evinces bad judgment, relief is not justified." *Id*;
>    *See also Fisher v. State*, 239 So. 24 863 (Fla. 3d DCA 1970) (finding that failure of
>    appointed counsel to move to suppress certain evidence was a matter within the range
>    of judgment or strategy of counsel, which, even if it represented bad judgment, did
>    not constitute ground for collateral attack of judgment on motion for postconviction
>    relief); *Collins v. State*, 382 So. 2d 418, 419 (Fla. 5th DCA 1980) (dissenting opinion
>    stating "erroneous advise by or an error in judgment of counsel is not sufficient to

render the assistance ineffective" and "we interpret the right to counsel to mean not errorless counsel, and counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance").

After reviewing the Motion, the testimony and evidence presented on November 22, 2004, the court file, and the record, the Court finds that Mr. Lopez made a strategic decision to keep Ms. Burkhardt under subpoena after the State agreed to release her because Mr. Lopez believed that Ms. Burkhardt's testimony was contradictory to the other facts and evidence presented at trial. Moreover, even if the Court finds that Mr. Lopez' decision to keep Ms. Burkhardt under subpoena after the State agreed to release her exhibited bad judgment, Defendant is not entitled to post conviction relief. *See Gonzalez v. State*, 579 So. 2d 145 (Fla. 3d DCA 1991). The Court further finds Mr. Lopez credible, while Defendant is not. As such, no relief is warranted upon ground 1(h).

(Respondent's Ex. 9 at pp. 27-28).

During the Rule 3.850 evidentiary hearing, defense counsel testified that the decision not to release Ms. Burkhardt from the subpoena was a tactical decision because he believed her testimony regarding the description of the man who robbed her was beneficial to the defense, and therefore he wanted her available in case he wanted to call her as a defense witness. (Respondent's Ex. 8 at p. 75). He also testified that it was his practice not to release victims from a subpoena, but instead ask that they be subject to recall. (Id. at p. 33). Finally, counsel indicated that even if he had agreed to release Ms. Burkhardt, the prosecutor still could have recalled her. (Id. at p. 75).

Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim. *Strickland v. Washington*, 466 U.S. at 690. It was defense counsel's standard practice not to release the victim of the crime from a subpoena. Before trial, Ms.

34

Burkhardt never had identified Rye as the man who robbed her.   During direct examination, she did not identify Rye as the perpetrator, and she continued to describe the perpetrator as "Hispanic" with "olive skin."   Thus, it was reasonable for counsel to conclude that Ms. Burkhardt could have been a favorable defense witness.  Rye fails to show that defense counsel's tactical decision was "patently unreasonable."  *Adams v. Wainwright*, 709 F. 2d at 1445.  Thus, he fails to show counsel's performance was deficient.   Moreover, because the State could have recalled Ms. Burkhardt even if defense counsel had agreed to release her from the subpoena, Rye cannot show prejudice.

The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim.   Accordingly, Ground Eight does not warrant relief.

Ground Nine

In Ground Nine, Rye complains that counsel was ineffective in failing to present evidence that prior to trial, Ms. Burkhardt was unable to identify Rye from a photopack, and instead indicated that the photographs of two other men resembled the man who robbed her.[7]  He asserts that had counsel presented this evidence, the jury would have given more weight to Ms. Burkhardt's initial description of the man who robbed her as a Hispanic man with olive skin.

In denying this claim, the state court held as follows:

> In ground 1(I), Defendant claims ineffective assistance of counsel for failing to present evidence of Ms. Burkhardt's previous identification attempt of Defendant and circumstances to the jury. Specifically, Defendant contends that counsel should have presented to the jury that Ms. Burkhardt viewed a photo line up which contained a recent photo of the Defendant and Ms. Burkhardt was unable to identify the Defendant. Defendant alleges that a photo line up was shown to bank teller, Ms. Burkhardt, and she picked numbers two (2) and four (4) as most looking like

---

[7]The Hillsborough County Sheriff's Office form indicated that Ms. Burkhardt "could not positively identify anyone in photopack.  W/m's in position #2 and #4 may be the person who robbed the bank." (Dkt. 33-2 at p. 7). Rye's photograph was in position #3.  (Id. at p. 6).

Defendant [sic], even though photo number three (3) was Defendant's Florida Identification card picture taken the day before the crime. Defendant contends that the fact that Ms. Burkhardt selected two other individuals as most resembling the robber, shows that counsel was ineffective. Defendant alleges that counsel should have recalled Ms. Burkhardt and Detective Hernandez and utilized a copy of the photo line up and the Defendant's Florida identification card to show the jury that Ms. Burkhardt did not identify the Defendant from the photo line up. Defendant further alleges that counsel was ineffective for failing to recall Ms. Burkhardt and Detective Hernandez as witnesses and releasing them both after they testified. Moreover, Defendant claims that if counsel presented that Ms. Burkhardt was not able to identify the Defendant from the photo line up, the outcome of the case would have been different.

At the November 22, 2004 evidentiary hearing, Defendant testified that he wanted Mr. Lopez to introduce Defendant's Florida identification card or impeach Ms. Burkhardt with such evidence based on the fact that the picture in the identification card was taken the day before the alleged crime and Ms. Burkhardt picked two other people from the photopack as most resembling the robber. (See Transcript, November 22, 2004, pages 12 1-122, attached).

At the November 22, 2004 evidentiary hearing, Mr. Lopez testified that he cross examined Ms. Burkhardt at trial regarding her failure to select Defendant from the photopack. (See Transcript, November 22, 2004, page 34, attached). However, when Mr. Lopez was questioned whether he asked Ms. Burkhardt on cross examination about the fact that she picked out two other people from the photopack, the State objected as follows:

Q Well, did you cross-examine her regarding the fact that she did not pick Mr. Rye's photograph from the photopack that she was shown?

A I think I asked her that on her direct examination on the first time she testified.

Q Your first cross?

A Yes.

Q Did you ask her about the fact that she actually picked out two other people?

A I don't recall if I was that specific.

Mr. Allen: Judge, I'm going to object - - and I'm - - it wasn't identification of two other people. That's not - - it's being stated to Mr. Lopez as fact, and that's not what occurred in the - -

Ms. James: Judge, I can show you the photographic display that she was shown. She selected photographs two and four as possible - - and Mr. Rye's photo was three. She did not choose him; and that's basically what the police report says.

Mr. Allen: Judge, the problem is if you look at that - - I want to make sure I speak - - but I believe it says looks like or something of that nature. I don't have it in front of me, but she ID'd these two other people. And I think that's misleading to Mr. Lopez.

Ms. James: Two and four could be. She wasn't positive.

Mr. Allen: Well, Judge, that's my point. No offense to counsel. That's a far cry from she misidentified these people and picked out two other people. That speaks for itself, and I want the record to be clear. I would acknowledge that she did look at two other people and said they are possible suspects. But as to the representation made by counsel, I do have a problem with that because that's not what occurred.

Court: Okay. I'll sustain that. Rephrase that one, Miss James. It says positions two and four may be the person. Could not positively identify anybody.

(See Transcript, November 22, 2004, pages 34-35, attached). Therefore, the Court finds that Ms. Burkhardt picked two individuals from the photopack as possible suspects, but did not in fact select such individuals as the robber that committed the crime. The Court further finds that Mr. Lopez cross examined Ms. Burkhardt regarding her identification of Defendant. (See Transcript. Vol II, September 24, 2001, pages 109-124; Transcript, Vol, III, September 25, 2001, pages 223-229, attached). In fact, the Court finds that when Mr. Lopez specifically asked Ms. Burkhardt, "from December the 22nd until yesterday, you have never identified any person as the robber," Defendant [sic] responded that such was correct. (See Transcript, Vol. III, September 25, 2001, page 229, attached). Consequently, the Court finds that Defendant has failed to meet the second prong of *Strickland* in that he has failed to prove how Mr. Lopez' failure to present a photopack to the jury which contained a recent picture of Defendant to show that Ms. Burkhardt selected two other individuals and was unable to identify Defendant, and failure to recall Ms. Burkhardt and Detective Hernandez to testify to show Ms. Burkhardt did not identify Defendant resulted in prejudice when Ms. Burkhardt merely indicated that two other people from the photopack were possible suspects, but Mr. Burkhardt did not positively identify the other two suspects as the robber and Mr. Lopez effectively cross examined Ms. Burkhardt regarding her identification of Defendant and elicited testimony that Ms. Burkhardt did not identify Defendant as the robber until September 24, 2001, the day of trial. Moreover, the Court finds that since Defendant has failed to meet the second prong of *Strickland*, it is unnecessary to address the

performance component. As such, no relief is warranted on ground 1(I).

(Respondent's Ex. 9 at pp. 28-31).

Counsel's performance must be evaluated for "reasonableness under prevailing professional norms." *Strickland.* 466 U.S. at 688. Defense counsel extensively cross-examined Ms. Burkhardt regarding how shortly after the robbery she gave a description of the man who robbed her, and that description did not even remotely match Rye.  Ms. Burkhardt also admitted that during her deposition, she gave the same description of the man who robbed her.  Finally, Ms. Burkhardt admitted that she never had identified the man who robbed her until the day of trial. Defense counsel's extensive cross-examination of Ms. Burkhardt regarding her identification of Rye was reasonable.

Even if, however, defense counsel was deficient in failing to cross-examine Ms. Burkhardt with this information, relief would not be warranted because Rye has failed to demonstrate prejudice. Rodriguez identified Rye from a photopack, as well as in court. Rodriguez had ample opportunity to identify Rye because they were co-perpetrators, and he drove Rye to and from the scene of the crime. Rodriguez's identification was corroborated by Rye's fingerprints on the demand note handed to Ms. Burkhardt.  Different handling of the cross-examination of Ms. Burkhardt would not probably have changed the outcome of trial. *See Routly*, 33 F.3d at 1289 (11th Cir. 1994) (no prejudice resulted from counsel's failure to more fully explore areas of cross-examination).

The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim.  Accordingly, Ground Nine does not warrant relief.

Ground Ten

In Ground Ten, Rye complains that counsel was ineffective in failing to use the bank's

videotape of the robbery to impeach the State's witnesses regarding the time of the robbery.
Specifically, Rye asserts that Ms. Burkhardt and Corporal Picard both testified that the robbery
occurred at approximately 11:20 a.m.  He asserts counsel should have impeached their testimony
with the videotape which indicated that the robbery occurred between 12:08 and 12:11 p.m.  Rye
asserts that had counsel impeached the witnesses' testimony regarding the time of the robbery, the
jury would have questioned the reliability of their testimony.[8]

In denying this claim, the state court held as follows:

> In ground 1(j), Defendant alleges counsel was ineffective for failing to utilize
> a videotape to impeach state witnesses as to the time of the robbery. Specifically,
> Defendant claims that the videotape of the robbery reflected that the robbery occurred
> on December 22, 1999 at 12:08:54 to 12:10:58 p.m. However, Defendant alleges that Ms.
> Burkhardt and Corporal Picard testified that the robbery occurred on December
> 22, 1999 at approximately 11:20 a.m. Defendant further alleges that counsel was
> ineffective for failing to utilize the videotape to establish there was a forty (40) to
> fifty (50) minute time difference between the videotape and the state witness
> testimony. Moreover, Defendant claims that if counsel utilized the videotape, the
> outcome of the case would have been different.

> After reviewing the Motion, the testimony and evidence presented on
> November 22, 2004, the court file, and the record, the Court finds that no testimony
> or evidence was presented in support of this portion of ground 1(j). However, at the
> November 22, 2004 evidentiary hearing, Defendant and State stipulated that the
> factual matter set forth in the Court's Order to Respond to Motion for Post
> Conviction Relief, filed on August 12, 2003, are those alleged by the defense at the
> November 22, 2004 evidentiary hearing. (See Transcript, November 22, 2005, pages
> 120-121, attached). Moreover, the Court finds Mr. Lopez to be credible, while
> Defendant is not. Therefore, the Court finds that Defendant has failed to meet the
> second prong of *Strickland*, in that he has failed to prove how he was prejudiced by
> Mr. Lopez' failure to utilize a videotape to impeach state witnesses as to the time of
> the robbery. As such, no relief is warranted on this portion of ground 1(j).

---

[8]In his amended memorandum of law, Rye also asserts that counsel's failure to impeach the witnesses'
testimony with the videotape violated his rights under the Confrontation Clause. (Dkt. 33 at p. 17).  Rye did not,
however, raise a Confrontation Clause claim with respect to this issue in his state Rule 3.850 motion.  (Respondent's
Ex. 5 at Record p. 82).  Consequently, the Confrontation Clause claim is unexhausted and procedurally barred from
review.

(Respondent's Ex. 9 at pp. 31-32).

Initially, this claim is procedurally defaulted for the same reason Grounds Thirteen through Nineteen, *infra*, are procedurally defaulted. Petitioner did not raise and make argument in support of this claim in his Initial Brief in his appeal of the denial of his Rule 3.850 post-conviction motion. (Respondent's Ex. 10). His failure to raise this claim in his Initial Brief constitutes a waiver of the claim under Florida law. (See discussion at Grounds Thirteen through Nineteen, *infra*.). Thus, review of this claim is procedurally barred.

Even if the claim was not procedurally defaulted, it would be denied because it has no merit. First, as the state court noted, no testimony or evidence was presented during the evidentiary hearing on this claim. Defense counsel was never questioned regarding why he did not impeach the witnesses with the videotape from the bank. (Respondent's Ex. 8 at pp. 6-88). In *Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court stated in pertinent part:

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.

*Id*. at 438.

Because Rye did not present evidence in support of this claim during the Rule 3.850 evidentiary hearing, the state court correctly denied the claim. Moreover, because Rye failed to develop the factual basis of the ineffective assistance of counsel claim in state court, and because he does not show that this claim relies on a new rule of constitutional law, or a factual predicate that

could not have been previously discovered through diligence, he is not entitled to an evidentiary hearing in this Court. See 28 U.S.C. § 2254(e)(2).

Second, the defense presented at trial was mistaken identity, i.e., that Rye was not the man in the video who robbed the bank. The defense did not assert that there was no robbery. Nor was evidence presented that Rye was at a different location at the time of the robbery. Whether the robbery occurred at 11:20 a.m. or 12:08 p.m. was not a material issue in the case. Thus, counsel's performance was not deficient in failing to impeach the witnesses with the time noted on the videotape.

The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting this claim. Accordingly, Ground Ten does not warrant relief.

Grounds Eleven and Twelve

In Ground Eleven, Rye complains that counsel was ineffective in failing to present during trial a Lens Crafter's receipt which indicated that Rye purchased a pair of eyeglasses at 12:12 p.m. on the date of the robbery. (Dkt. 33-2 at p. 19). Rye argues that the receipt proved that he was not at the bank at the time of the robbery.

In Ground Twelve, Rye complains that counsel was ineffective in failing to call Thomas Breakey ("Breakey") as an alibi witness. Breakey signed an affidavit on August 9, 2000, stating that on the date of the robbery, Rye was with him between the hours of 6:30 a.m. and 12:00 p.m. working a construction job, and between 12:00 p.m. and 2:30 p.m. traveling to and from, and shopping at a mall. (Dkt. 33-2 at pp. 21-22).

In denying this claim, the state court held in pertinent part as follows:

After reviewing the Motion, the testimony and evidence presented at the

November 22, 2004 hearing, the court file, and the record, the Court finds that Defendant advised Mr. Lopez about the Lenscrafters receipt prior to trial for a possible alibi defense. However, the Court finds that after speaking to Defendant regarding the facts of the case, and investigating the Lenscrafters receipt, Mr. Lopez determined that Defendant had manufactured an alibi defense which Mr. Lopez decided he would not participate in presenting to the jury. The Court finds that Mr. Lopez further determined that the Lenscrafters time clock was one hour off based on his conversations with Defendant and the fact that it was close to daylight savings time. Moreover, the Court finds that after speaking to Defendant regarding facts of the case, Mr. Lopez believed he had strong mistaken identity defense. Moreover, the Court finds that Mr. Lopez tactically did not believe he needed to pursue the mistaken identity defense.

. . .

Consequently, the Court finds that Mr. Lopez made a strategic decision to pursue only the defense of mistaken identity and elected not to pursue the weaker of the two defenses, an alibi defense, based on Mr. Lopez' conversations with Defendant which indicated that the alibi defense was manufactured, based on Mr. Lopez' concern of presenting false testimony to the jury, and based on the fact that Mr. Lopez believed Defendant had a very strong mistaken identity defense. Moreover, even if the Court finds that Mr. Lopez' decision not to pursue an alibi defense exhibited bad judgment, Defendant is not entitled to post conviction relief. See Gonzalez v. State, 579 So. 2d 145 (Fla. 3d DCA 1991). Furthermore, the Court finds Mr. Lopez credible, while Defendant and Mr. Breakey are not. As such, no relief is warranted on ground 1(k).

After reviewing the Motion, the testimony and evidence presented at the November 22, 2004 hearing, the court file, and the record, the Court finds that Defendant provided Mr. Lopez with the affidavit of Mr. Breakey. However, the Court finds that after speaking to Defendant regarding the facts of the case, and investigating the potential alibi defense, Mr. Lopez determined that Defendant had manufactured an alibi defense which Mr. Lopez decided he would not participate in presenting to a jury. Moreover, the Court finds that after speaking to Defendant regarding facts of the case, Mr. Lopez believed he had strong mistaken identity defense. Additionally, the Court finds that when the Court questioned Defendant regarding his right to call witnesses, Defendant never raised the alibi defense or witnesses to support such defense. The Court further finds that Mr. Lopez did not believe that tactically he needed to present an alibi defense. Furthermore, the Court finds Mr. Lopez credible, while Defendant is not.

(Respondent's Ex. 9 at pp. 32-46).

Provided the decision is reasonable, an informed choice to pursue one defense over another

42

is a matter of trial strategy that cannot form the basis of a claim of ineffective assistance of counsel. *See Knight v. Dugger*, 863 F.2d 705, 752 (11th Cir.1988) ("When an attorney makes an informed choice between alternatives, his tactical judgment will almost never be overturned on habeas corpus.") (citing *Griffin v. Wainwright*, 760 F.2d 1505 (11th Cir. 1985)). "Notwithstanding the possibility that other lawyers may have employed another strategy, a finding of constitutionally ineffective representation is not automatically mandated." *Id.* (citing *Griffin*, 760 F.2d at 1514). Further, "[a]lthough counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Nix v. Whiteside*, 475 U.S. 157, 166 (1986). "[A]ttorneys are not required to violate ethical standards to serve their client's ends. A defendant has no constitutional right to have his attorney present evidence that the attorney believes is false." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1349 n. 14 (11th Cir. 2009) (citations omitted).

During the Rule 3.850 evidentiary hearing, defense counsel testified that Rye had indicated to him that he was with Rodriguez on the morning of the robbery. (Respondent's Ex. 8 at pp. 8-10). Based on Rye's statements to him, and the depositions and other information at counsel's disposal, counsel concluded that Rye was not with Breakey on the day of the robbery, Breakey's affidavit was false, and that he was not going to present a fraudulent alibi defense. (Id. at pp. 8-15). Further, based on all the information he had at his disposal, he also concluded that the time indicated on the Lens Crafter's receipt was inaccurate. (Id. at pp. 24-26). Counsel believed that if he presented Rye's alibi defense that he would be violating the code of ethical responsibilities. (Id. at p. 23). Moreover, counsel believed that Rye had a very strong mistaken identity defense. (Id. at pp. 15-16).

Breakey, a convicted felon, testified that he and Rye were working construction together on

the day of the robbery from 6:30 a.m. until approximately 12:00 p.m. (Id. at pp. 90-91). He then drove Rye to University Mall where they arrived at approximately 12:15 p.m. (Id. at pp. 92-93). Breakey went to Sears while Rye went to Lens Crafters. (Id. at p. 93). They met again at 1:15 p.m., and Breakey dropped Rye off at a Burger King at approximately 1:30 p.m. (Id.).

Breakey did not know Rye until the day of the robbery. (Id. at p. 95). He had hired Rye "on the street" to work for him that day. (Id.). The next time he saw Rye was when they were both incarcerated at Falkenburg Road Jail in Tampa, Florida in July and August of 2000. (Id. at pp. 93, 95, 97-100).

Rye testified in pertinent part that he never told defense counsel that he was with Rodriguez on the day of the robbery. (Id. at pp. 112, 130-31). Instead, Rye testified that he told defense counsel that he had an alibi witness, and "related" to counsel "what was put in [Breakey's] affidavit." (Id. at p. 112).

The state post-conviction court found "Mr. Lopez credible, while Defendant and Mr. Breakey are not." (Respondent's Ex. 9 at p. 39). A federal habeas court "must accept the state court's credibility determination..." *Baldwin v. Johnson*, 152 F.3d at 1316. Further, Rye has failed to overcome the state court's factual findings with clear and convincing evidence. See 28 U.S.C. § 2254(e) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Ward v. Hall*, 592 F.3d 1144, 1177 (11th Cir. 2010) (state court's factual findings are accurate unless the petitioner can undermine that presumption with clear and convincing evidence).

Because Rye indicated to counsel that he had been with Rodriguez and explained what they did together on the day of the robbery, counsel reasonably concluded that Breakey's affidavit was false, and that Rye's alibi defense was fraudulent. Because he determined the alibi defense was fraudulent, counsel was "precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Nix v. Whiteside*, 475 U.S. at 166.  Because counsel had good reason to believe Rye was attempting to commit a fraud, and there was a strong defense of mistaken identity, counsel's informed choice to pursue only the mistaken identity defense was not deficient performance. *See Ray v. Campbell*, 2008 U.S. App. LEXIS, at *5 (11th Cir. 2008) (unpublished opinion) ("We have held that it is not ineffective representation when counsel does not present false or misleading testimony."). Further, Rye cannot show that he was prejudiced by counsel's failure to present the alibi defense because "[e]ven if a defendant's false testimony might have persuaded the jury to acquit him, it is not fundamentally unfair to conclude that he was not prejudiced by counsel's interference with his intended perjury." *Williams v. Taylor*, 529 U.S. 362, 392 (2000) (citing *Nix v. Whiteside*, 475 U.S. at 175-76).

The state post-conviction court neither unreasonably applied *Strickland* nor unreasonably determined the facts in rejecting these claims.  Accordingly, Grounds Eleven and Twelve do not warrant relief.

Grounds Thirteen through Nineteen

In Grounds Thirteen through Nineteen, Rye complains that:

13) Counsel was ineffective in failing to call Petitioner to testify;

14) Counsel was ineffective in failing to inform the jury that Petitioner had a large tattoo on his forearm;

15) Counsel was ineffective in failing to recall Detective Hernandez;

16) Counsel was ineffective in failing to call Detective McGill to testify that he did not find Rye's fingerprints in Rodriguez's truck.

17) Counsel was ineffective in misadvising Petitioner regarding the consequences of testifying;

18) Counsel was ineffective in failing to object to or move for a mistrial because of the prosecutor's improper statements during closing argument; and

19) Counsel was ineffective in failing to object to the "principal" instruction.

Respondent asserts that Grounds Thirteen through Nineteen are procedurally barred because they were not presented and argued in Rye's Initial Brief in his post-conviction appeal. In his reply, Petitioner does not dispute Respondent's assertion that he did not present these claims in his Initial Brief in his post-conviction appeal (Dkt. 16). Instead, he asserts that "under the actual innocence exception this court should grant habeas relief as the state has failed to produce sufficient evidence of Petitioner's guilt." (Id. at p. 6).

Petitioner's claims are procedurally defaulted due to Petitioner's failure to raise them on appeal from the denial of his Rule 3.850 motion for post-conviction relief (Respondent's Ex. 10). In an unpublished opinion, the Eleventh Circuit addressed this issue and differentiated between a state post-conviction appeal following a summary denial and an appeal following a post-conviction proceeding for which an evidentiary hearing was granted, as it was in Petitioner's case:

> Cortes's appeal did not follow an evidentiary hearing, and, therefore, he was not required to file an appellate brief. Furthermore, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion. *See Webb v. State*, 757 So. 2d 608, 609 (Fla. Dist. Court. App. 2000). Therefore, Cortes did exhaust his state remedies prior to filing his § 2254 petition.

In contrast, *had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver.* (footnote omitted).

*Cortes v. Gladish*, 216 Fed. Appx. 897 (11th Cir. 2007)  (emphasis added). The Eleventh Circuit correctly stated that in Florida, in non-summary proceedings, briefs are required and failure to include and argue any preserved issue in the initial brief acts as a waiver. *See Coolen v. State*, 696 So. 2d 738, 742 n. 2 (Fla. 1997) (stating that a failure to fully brief and argue points on appeal "constitutes a waiver of these claims") (quoted in *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006)). *See also, Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief.").

Florida Rule of Appellate Procedure 9.141(b)(2) provides that in appeals from the summary denial of a Rule 3.850 motion without an evidentiary hearing, "[n]o briefs or oral argument shall be required, but any appellant's brief shall be filed within 15 days of the filing of the notice of appeal. The court may request a response from the appellee before ruling." Fla. R. App. P. 9.141(b)(2)( c). In contrast, in an appeal of a Rule 3.850 order after an evidentiary hearing, the movant is required to file an appellate brief, and the movant waives a claim if he does not include the claim in the brief with argument on the claim.  *See, e.g., Shere v. State* , 742 So.2d 215, 224 n.6 (Fla. 1999)("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); *Duest v. Dugger*, 555 So. 2d 849 (Fla. 1990)("Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. The purpose of an appellate brief is to present arguments in

support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

Because Petitioner's post-conviction appeal was from a Rule 3.850 order denying relief after an evidentiary hearing, he was required to file a brief on appeal of the denial of post-conviction relief and to provide argument relative to each ground on appeal. *Reaves v. Crosby*, 837 So. 2d 396, 398 (Fla. 2003)(Other than one cursory sentence, there was no argument relative to a ground; ground was not properly before the state court where other than one cursory sentence, there was no argument relative to the claim). By choosing not to brief the claims presented in Grounds Thirteen through Nineteen, Petitioner waived and defaulted these claims.

Petitioner, however, appears to assert that this Court should review his claims on the merits because he is actually innocent of the crime for which he was convicted.  In support of his actual innocence claim, Petitioner argues that the State failed to present sufficient evidence to support the robbery conviction.

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986)(explaining a "fundamental miscarriage of justice" occurs "in  an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual

48

innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). Rye cannot avoid the procedural bar because he has neither argued nor shown the existence of cause and prejudice. Moreover, Rye does not qualify for the fundamental miscarriage of justice exception because he has no new and reliable evidence of actual innocence. *Schlup v. Delo*, 513 U.S. at 321-322.  Instead, he solely argues that the evidence presented at trial was insufficient to support the conviction.  Accordingly, Grounds Thirteen through Nineteen are unexhausted and procedurally barred.

Ground Twenty

In Ground Twenty, Rye asserts that he is factually innocent of the crime for which he was convicted.[9]  He argues that his alibi evidence proves that he could not have committed the robbery.

Initially, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). It is not the role of the federal courts to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. *See Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact." *Id.* (quoting *Herrera*, 506 U.S. at 400).

Further, even if a freestanding claim of actual innocence was cognizable here, a habeas

---

[9]In his amended memorandum of law, Rye also appears to assert that the State misrepresented facts in violation of *Giglio v. United States*, 405 U.S. 150 (1972), and withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83(1963). (Dkt. 33 at p. 29).   Rye did not, however, raise these claims in state court. Consequently, the claims are unexhausted and procedurally barred from review.

petitioner attempting to establish "actual innocence" must meet a high standard. *Bousley v. United States*, 523 U.S. 614 (1998).  Petitioner must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'"     *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)).  To be credible, a claim of actual innocence requires  the  petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324.

Here, Rye appears to assert that  the Lens Crafter's receipt which indicates that he purchased glasses at 12:12 p.m., and the bank's videotape which indicates that the robbery occurred between 12:08 and 12:11 p.m., prove that he is actually innocent of the crime because it would have been impossible for him to be at the bank at 12:11 p.m., and then to have purchased glasses at a store 7 miles away at 12:12 p.m. Rye, however, has come forward with no new *reliable* evidence to support his claim of actual innocence. There is no indication from the record that the times displayed on the Lens Crafter's receipt and the bank's videotape were accurate or reliable.  The testimony at trial was that the robbery occurred at approximately 11:20 a.m.  (Respondent's Ex. 25, Vol. III at pp. 92, 95, 97, 128). The Criminal Report Affidavit indicated that the time of the offense was 11:20.  (Id., Vol. I at p. 18).  If the robbery occurred at 11:20 a.m., and the time indicated on the Lens Crafter's receipt, 12:12 p.m., is accurate, then Rye could have committed the robbery.  Rye's "purported facts fall far short of the type and quantity of evidence necessary to establish 'a truly persuasive demonstration of 'actual innocence.'''" *In re Lambrix*, 624 F.3d 1355, 1367 (11th Cir. 2010) (quoting *Herrera*, 506 U.S. 390).

Accordingly, Ground Twenty does not merit federal habeas relief.

## EVIDENTIARY HEARING

An evidentiary hearing is unnecessary as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, the Court **ORDERS** that:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The clerk is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). (Id.). "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma*

*pauperis.*

**DONE AND ORDERED** in Tampa, Florida on *MARCH 29th*                , 2011.


JAMES D. WHITTEMORE
United States District Judge

SA: sfc
Copy to:
Petitioner, *pro se*
Counsel of record

52